# Booth, et al., *v.* Stokes, Receiver, Appellant.

*Negligence—Master and servant—Guarding machinery—Act of May 2, 1905, P. L. 352—Factory inspector—Approval of guard—Instructions—Contributory negligence—Case for jury.*

1. The Act of May 2, 1905, P. L. 352, requiring certain machinery to be properly guarded, lays a duty upon the owner or person in charge of the establishment where the machinery is used, and failure to perform the duty, resulting in injury to an employee, will render the owner liable. "Properly guarded" is a relative term or expression, and whether the statutory requirement in that respect has been complied with necessarily depends upon the facts of a particular case. The necessity for an artificial guard depends upon the existence of certain conditions, and is a question of fact for the jury.

2. The approval or disapproval of a state factory inspector is not the test of the owner's liability in such a case. Where an employee is injured by reason of the failure of his employer to properly guard exposed machinery, the negligence consists of the disobedience of the employer and not of the factory inspector, to comply with the statutory requirements. It follows, therefore, that the approval of the guard in any case by a factory inspector is not conclusive as to whether the machinery is properly guarded within the meaning of the statute.

3. In an action to recover damages for injuries sustained by an employee while working at a suction pump, operated by gears in defendant's shop, the case was necessarily for the jury, where it appeared that the employee was an inexperienced youth of seventeen years of age, who had never worked at this or other similar machinery before, and who was given no instructions by the defendant as to how to avoid the danger, and where it further appeared that the cogs operating the machine were not sufficiently guarded, in consequence of which the plaintiff, while resting his hand upon the top of an insufficient guard, to protect himself from falling while engaged in the work, caught his hand in the cogs and was injured.

Argued April 20, 1913. Appeals, Nos. 199 and 200, Jan. T., 1912, by defendant, from judgment of C. P. York Co., Jan. T., 1912, No. 92, on verdict for plaintiff in case of Harry Booth, by his father and next friend

Edward Booth, and Edward Booth in his own right, v. Henry W. Stokes, Receiver of the York Haven Paper Company.    Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ.    Affirmed.

Trespass to recover damage for personal injuries. Before ROSS, J.

From the record it appeared that Harry Booth, one of the plaintiffs, was injured while at work at defendant's mill.    Booth was seventeen years old, and had been working at this mill for about two years prior to the time of the accident.    Before the day he was hurt, he had not worked upon the pump, in the cleaning of which he was injured, and he had not seen anyone else cleaning it.    The pump was operated by gears.    There was a partial guard that covered the gears at the point where they meshed and covered the smaller of the gears and about half of the larger gear, leaving about half of the larger gear unguarded.    Booth was given no instructions as to how to clean the pump and was not told of dangers that might be encountered in cleaning it.    The floor where he stood was covered with oil and was slippery.    He laid his hand upon the partial guard above described, to keep from falling against the machinery, and his thumb was caught between the large gear and the guard and was crushed, so that amputation was necessary.

Verdict for Edward Booth for $845.91, and for Harry Booth for $1,560.00, and judgment thereon.    Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant, and to enter judgment for defendant n. o. v.

*M. S. Niles* and *H. C. Niles,* with them *Charles A. May* and *George E. Neff,* for appellant.

*J. S. Black,* with him *C. W. A. Rochow, S. B. Meisen-helder* and *V. K. Keesey,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, May 28, 1913:

The plaintiff alleges that the defendant was negligent in not providing a proper guard on a suction pump as required by the Act of May 2, 1905, P. L. 352, and in failing to give proper instructions and warning of danger to him, a young and inexperienced employee. Both questions were submitted to the jury and found for the plaintiff. The learned counsel for the defendant strenuously argues that there was no sufficient evidence to warrant the jury in finding that the gears or cog-wheels of the pump by which the plaintiff was injured were not properly guarded or that he was not properly instructed as to the performance of his duties. We have examined the evidence carefully and cannot agree with the counsel's contention. In fact, we are inclined to agree with the suggestion of the plaintiff's counsel that the court could have instructed the jury that the machinery was not properly guarded as required by the Act of 1905. The defendant's own witnesses so testified. The factory inspector, called by the defendant, testified that the machinery was not safe to an inexperienced man, and that it would be safer if boxed up entirely. William H. Brounell, an operating and erecting engineer in the employ of the defendant and called by him as a witness, also testified that the machinery, as guarded, was dangerous to inexperienced people.

Section 11 of the Act of May 2, 1905, P. L. 352, requires that "all......cogs, gearing,......and machinery of every description shall be properly guarded." In McCoy v. Wolf Company, 235 Pa. 571, we held that whether in any given case where the evidence is conflicting machinery was properly guarded in contemplation of the Act of 1905 was a question for the jury. It is there said (p. 574): " 'Properly guarded' is a relative term or expression, and whether the statutory require-

ment in that respect has been complied with necessarily depends upon the facts of the particular case...... The necessity for an artificial guard depends upon the existence of certain conditions and is a question of fact for the jury." This is a statutory duty imposed upon the owner or person in charge of the establishment where the machinery is used, and a failure to perform the duty resulting in injury to an employee will render the owner liable. The approval or disapproval of the factory inspector is not the test of the owner's liability in such cases. The principle which relieves the owner or operator of a coal mine from liability for the negligence of a mining boss has no application in cases of this kind. There, the statute imposes certain duties upon the mining boss who is in charge and control of the mine and whose authority, under the statute, is superior to that of the owner, and for this reason the latter is not held responsible for the former's negligence. Where an employee is injured by reason of the failure of his employer to properly guard exposed machinery the negligence consists of the disobedience of the employer, and not of the factory inspector, to comply with the statutory requirement. The statute does not place the factory inspector in the management or control of the establishment, or take from the owner his control or management of the plant. The purpose in the appointment of the factory inspector is, as declared by the statute, "to more effectually secure the observance of the provisions of this act." It is not his duty to provide guards for machinery in any establishment, but to enforce the provisions of the statute which require the owner or person in charge of the establishment to provide such guards. It follows, therefore, that the approval of a guard in any case by a factory inspector is not conclusive as to whether the machinery is properly guarded within the meaning of the statute. The duty rests upon the owner of the establishment, and

when the question is raised it can only be determined by a jury as any other question of fact.

It is true that the employer is relieved from the duty to instruct where the danger is open and obvious and the employee appreciates the danger and knows how to avoid it. It would be futile to require instructions to be given to any employee who is fully informed as to the manner of performing his service and how to avoid its dangers. The law does not require a vain or useless thing. In the present case, however, the employee was an inexperienced youth of seventeen years who had never worked about this pump or one like it, and who was, according to his testimony, unfamiliar with the work or the danger in performing it. Whether under the evidence, the defendant should have instructed the plaintiff was a question for the jury.

It is contended that the plaintiff was guilty of negligence which contributed to his injury, and that, therefore, he cannot recover in this action. We are unable to see how that question could have been withdrawn from the jury. The plaintiff testified: "I rested my hand right on top of the guard, to protect myself from falling on the gear and slipping in the fan pump that was back of me, and leaned front to wipe the part of the pump off. My hand slipped off the guard and got in under the guard and the gear somehow...... I had to lay my hand on the guard to keep from falling on the gear and slipping in the fan pump that was back of me." There is no evidence in the case that would have warranted the jury in finding that this manner of performing the work which the plaintiff was required to do was negligent, or that the work could have been done in any other or safer way.

We have carefully examined the several assignments and fail to discover any reversible error in the record.

The judgment is affirmed.