## Price *v.* New Castle Refractories Company, Appellant.

508

Argued October 4, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*J. Norman Martin,* with him *Norman A. Martin,* of *Martin & Martin,* for appellant.

*William D. Cobau,* with him *J. Glenn Berry,* of *Cobau & Berry,* for appellee.

Opinion by Mr. Justice Barnes, January 9, 1939:

Plaintiff seeks to recover damages for the death of her husband, who was an employee of the defendant. She alleges that he died from the disease known as silicosis, which he contracted as a result of the failure of defendant to provide him with a reasonably safe place in which to work.

The deceased was employed as the operator of a machine called a segment grinder, used for polishing ceramic or pottery products manufactured by the defendant. He entered its employ in 1921, and became a grinder in 1924, thereafter continuing at that occupation until the first week in June, 1935, except for a month's absence from his employment in 1933. In October, 1935, he was admitted to a state sanatorium for the treatment of tuberculosis and remained there until he died on February 9, 1936.

The grinder at which the deceased worked consisted of a wheel with an external surface of carborundum blocks that revolved in proximity to a movable table. The act of grinding was performed by placing the ceramic product to be polished upon the table, which was then moved forward until the material came in contact with the abrasive surface of the wheel. This operation created dust which was discharged into the air.

Plaintiff asserts that defendant failed to provide the machine with an adequate hood, and a sufficient device, such as a suction fan and pipe, for carrying away the dust. She charges that excessive quantities of dust containing free silica were released into the atmosphere about the machine, and as a result of inhaling this silica-laden air over a period of years, her husband contracted silicosis, which brought about the tubercular condition causing his death; further, that defendant was negligent because it did not supply the deceased with a dust mask of the character customarily worn by operators of such grinding machines to prevent dust from penetrating to the lungs.

According to plaintiff the dust hazard arose because defendant violated the provisions of Section 11 of the Act of May 2, 1905, P. L. 352, which prescribes that "The owner or person in charge of an establishment where machinery is used shall provide . . . exhaust fans of sufficient power, or other sufficient devices, . . . for the purpose of carrying off poisonous fumes and gases, and dust from emery wheels, grind-stones and other machinery creating dust." Plaintiff's evidence went to show that although an exhaust fan was installed at the machine, it was not of sufficient power to carry off the dust produced; that the mechanism of the fan was not kept in working condition, but was permitted to become clogged and useless; that defendant failed to warn deceased of the dangers to which he was subjected in breathing the dust.

The defendant denies that plaintiff's husband died of silicosis, but claims that the cause of his death was pulmonary tuberculosis which was contracted from causes having no relation to the conditions of his employment. It claims that there was not a sufficient amount of free silica in the atmosphere about the grinder to cause silicosis. It contends that it complied with the provisions of the Act of 1905, supra, by attaching to the machine a dust removal appliance of the best type available, and in general use throughout the industry; that it provided decedent with a mask for his use, but that he neglected to use it, and finally it says that decedent was guilty of contributory negligence.

The jury returned a verdict for plaintiff. Thereafter the court below dismissed defendant's motions for judgment non obstante veredicto and for a new trial. The defendant has appealed from the judgment entered upon the verdict.

The disease to which plaintiff attributes her husband's death was occupational, and therefore was not compensable at the time under the Workmen's Compensation Act of June 2, 1915, P. L. 736, and its supplements:

*Mauchline v. State Insurance Fund,* 279 Pa. 524.[1] In consequence the real question here is whether the defendant furnished the deceased with a reasonably safe place to work as measured by the requirements of the Act of 1905, supra: *Plazak v. Allegheny Steel Co.,* 324 Pa. 422. As expressed in its title, the purpose of that Act is to provide for the safety of employees in all industrial establishments: *Lanahan v. Arasapha Mfg. Co.,* 240 Pa. 292; *Kelliher v. Brown & Co.,* 242 Pa. 499. The provisions of the Act are mandatory, and proof that the employer has failed to comply with the duties imposed thereby and that an employee, without negligence on his part, has been injured as a result of such neglect, constitutes actionable negligence, rendering the employer liable for the harm so caused. Whether an employer has complied with the provisions of the statute is a question of fact for the jury, under all the circumstances of the particular case.[2]

While plaintiff admits that there was a cover over the wheel and a suction fan was installed by defendant, it is denied that they were sufficient to eliminate the accumulation of dust in the atmosphere, and that they complied with the terms of the Act. It is not disputed by defendant that the fan and cover were inadequate to carry away the dust about the grinding machine. Witnesses for plaintiff testified in this connection that "you couldn't tell who was coming down through the shop, through the dust from this grinder," and that it was "just like a heavy fog in there with dust." Also there was evidence that not more than twenty-five per cent of the dust engendered by the grinding process was elimi-

---

[1] There has since been enacted the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714.

[2] See *McCoy v. Wolf Co.,* 235 Pa. 571; *Izzo v. Finn,* 238 Pa. 602; *Booth v. Stokes,* 241 Pa. 349; *Smith v. Phila. Rubber Works Co.,* 248 Pa. 494; *Gross v. Eagle Wheel Mfg. Co.,* 252 Pa. 361; *Fritz v. Elk Tanning Co.,* 258 Pa. 180; Restatement, Torts, Section 286.

nated by the appliance. It was shown that not infrequently the fan and pipe were in a state of disrepair.

Defendant urges that it was not an insurer of the employee working at a dangerous piece of machinery, and that it performed its full duty under the statute when the preventive devices which it adopted were of the kind generally approved and in use in like plants throughout the country. But under the rule of our cases upon the subject, merely because the particular device employed was similar to that "generally approved and customarily used" in the industry, that fact, of itself, would not exonerate the defendant of the charge of negligence. While custom or practice prevailing in a particular business in the use of methods, machinery and appliances is a most important factor in determining the question of negligence, ultimately it is for the jury to find whether under all the evidence—particularly where, as in the present case, it consists of oral testimony—the defendant was negligent: *Fox v. Keystone Tel. Co.*, 326 Pa. 420, 427.[3] And certainly ordinary usage in disregard of a statutory duty cannot relieve the defendant of liability for a failure to respond to the legislative mandate: *Jones v. Amer. Caramel Co.*, 225 Pa. 644, 650. In *King v. Darlington Brick & Mining Co.*, 284 Pa. 277, it is said (p. 285) : ". . . customary use, while a matter to be considered, is not conclusive as against the positive command of a statute." See also *Schwartz v. Caplan*, 256 Pa. 239.

It is clear to us from a study of the record that the question here was for the jury to decide and its finding for the plaintiff compels the conclusion that the device used by the defendant was insufficient. An ineffective and feeble device is no more a fulfillment of the legislative demand than no device at all: *Fritz v. Elk Tanning*

---

[3] See *Shaughnessy v. Dir. Gen. of R. R.*, 274 Pa. 413, 416; *Sorensen v. Quaker City Poster Adv. Co.*, 284 Pa. 209, 211; *Fisher v. Pomeroy's, Inc.*, 322 Pa. 389, 392.

*Co.,* 258 Pa. 180. The shadow of compliance will not be accepted for the substance of the statutory requirement.

There is a conflict in the evidence as to whether the death of the husband was caused by silicosis or by pulmonary tuberculosis. That he inhaled a vast quantity of the dust particles in consequence of his constant exposure to them cannot be disputed. The testimony is at variance upon the question whether the atmosphere contained free silica in sufficient quantities to cause silicosis. Plaintiff produced evidence to the effect that silicosis could result from the constant inhalation of dust particles containing even a minute quantity of free silica. Experts testified that a pathological post-mortem examination disclosed the presence of "gritty" substance, scar tissue and "nodules" in decedent's lungs, indicating that he suffered from silicosis. Other "nodules" were found, pointing to a tubercular, as well as a combined tubercular and silicotic condition. In the light of such testimony we cannot say that the jury's determination of this question is not supported by the record. A similar contention was made in the case of *Fritz v. Elk Tanning Co.,* supra, where the plaintiff claimed that his injuries resulted from sulphuric acid poisoning caused by breathing fumes given off from the defendant's vats. There was a conflict in the evidence whether the mixing of sulphuric acid with boiling water could cause poisonous fumes to arise under the conditions described by plaintiff. We held that the question was one for the jury to decide, and a verdict for plaintiff was sustained. Here the same conclusion is warranted by the evidence.

There remains the question of contributory negligence. While ordinarily available in the master-servant cases, it is settled that the defense of assumption of risk is not permissible where the employee is injured through the failure of the employer to comply with the Act of 1905: *Valjago v. Carnegie Steel Co.,* 226 Pa. 514; *Fegley v. Lycoming Rubber Co.,* 231 Pa. 446; *Solt v. Williamsport*

*Radiator Co.,* 231 Pa. 585; *Plazak v. Allegheny Steel Co.,* supra. Although the decedent in the present case may have been aware of the presence of the dust in the factory, it is extremely doubtful that he was conscious of the real risk involved,—the danger of the contraction of silicosis. Such a degree of scientific knowledge is not to be attributed to an ordinary factory employee. In *Wagner v. Jayne Chemical Co.,* 147 Pa. 475, where the employee suffered injuries from inhaling nitric acid fumes, it is said (p. 479) : "Neither is there anything in the employment of a common laborer that presupposes any scientific knowledge, such as a knowledge of the properties of acids, or that poisonous fumes are likely to be evolved in a manufacturing process in which nitric acid is used; and for that reason the law does not presume that such laborer either possesses or professes such knowledge." This reasoning may well be applied to the present case with the result that such a defense is without avail.

However, contributory negligence of the employee, as distinguished from voluntary assumption of risk, is a complete defense to an action based upon the violation of the Act involved: *Smith v. Phila. Rubber Works Co.,* 248 Pa. 494; *Hoffman v. Brentmore Knitting Mills,* 252 Pa. 337. Defendant's principal contention in this regard is that decedent neglected to use the dust mask with which he was provided. Plaintiff's witnesses testified that no workable masks were supplied, since those furnished were unfit for use. If decedent operated the machine without the mask at times when the fan and exhaust pipes were not functioning, his conduct in so doing undoubtedly would have constituted contributory negligence, barring this action. Again this is a question of fact for the jury to decide under the evidence, and by its verdict it has clearly indicated that decedent was not guilty of negligence. We see no reason to disturb this finding.

It is not necessary to discuss the remaining assignments of error relating to the trial court's refusal of de-

fendant's points for charge. We have examined them and are of opinion that the matters therein contained were fully and substantially discussed in the charge to the jury. We have said that a judgment will not be reversed because a point presented was not answered or declined, if it appears that the question so raised was substantially covered in the charge: *Hufnagle v. Dela. & Hudson Co.,* 227 Pa. 476; *Warruna v. Dick,* 261 Pa. 602; *Pringle v. Smith,* 289 Pa. 356.

Judgment affirmed.